IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEXTER SALLIS,

                    Plaintiff,                    OPINION and ORDER

    v.                                                         08-cv-514-slc

DR. BURTON COX and JOHN PAQUIN,

                    Defendants.

---

In this prisoner civil rights lawsuit, plaintiff Dexter Sallis alleges that his migraine medicine was withheld for two weeks until he could obtain a co-payment, which he contends amounts to a violation of his Eighth Amendment right to adequate medical care in prison. According to plaintiff, defendant Burton Cox was involved in creating the delay and defendant John Paquin failed to intervene when plaintiff complained about the delay.

Now before the court are the parties' cross motions for summary judgment. I am granting summary judgment in favor of defendants because plaintiff has failed to adduce evidence that would allow a reasonable jury to infer that either defendant was aware of plaintiff's need to renew his prescription for migraine medicine before defendant Cox received a note about the matter, after which he promptly prescribed the medicine.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

UNDISPUTED FACTS

Plaintiff Dexter Sallis has a history of suffering from migraine headaches. On November 13, 2007, plaintiff was given a prescription for a medicine for headaches called acetaminophen/ dichloralphenazone/ isometheptene. Under the prescription, plaintiff could take two capsules

at the onset of a headache and one to two capsules within one hour, with a maximum of four capsules daily. This prescription was scheduled to expire on May 7, 2008.

On January 30, 2008, plaintiff was received for incarceration at the Prairie Du Chien Correctional Institution. On February 19, 2008, he went to see defendant Burton Cox, a physician at the institution. Plaintiff told defendant Cox about his migraine headaches. Defendant Cox documented plaintiff's general complaint of "H.A.'s" (headaches) in a "progress notes" form.

On May 7, 2008, plaintiff had a migraine headache and went to ask for his headache medicine. An officer Fritz told him that the medicine had been ordered to stop on that date. According to an inventory of plaintiff's controlled substances, 21 capsules of the medicine remained in his inventory.

At the institution, prisoners seeking non-emergency medical treatment or information submit health service request forms to the institution's Health Services Unit. Inmates may ask to see staff at the Health Services Unit by checking a box on the form. Another box on the form may be checked to indicate that a prisoner does not want to see health services staff. When a prisoner requests treatment, the request is documented in the prisoner's "progress notes," triaged and acted upon by health care professionals. However, when a prisoner requests incidental information, such as why a medication has been stopped, the request need not be documented in the progress notes.

A co-payment is assessed for all non-emergency treatment sessions that the prisoner requests. For each health service request that results in face-to-face treatment of the prisoner, the prisoner is charged $7.50. There is no charge for appointments initiated by health care

providers, scheduled follow-up visits, referrals or situations deemed to be medical emergencies by the health care provider. If a prisoner believes he needs immediate treatment, he may go to "sick call," where the prisoner will be seen by nurses to determine whether the prisoner should be seen by a doctor.

A prisoner receiving medications has a responsibility to request his own refills on medication. To allow the Health Services Unit time to reorder the medication from the pharmacy, a prisoner should request a refill five to seven days before his current medication runs out.

On May 8, 2008, plaintiff submitted a health service request to the health services unit, asking, "Why have you ordered my headache medicine to stop on May 7, 2008?" Plaintiff did not ask to see health services unit staff. Health Services Unit staff responded, "[I]f you need an appointment, a $7.50 co-pay applies." Plaintiff submitted another health service request the same day, asking "Why have you stopped the medication I get for headaches? The medication stopped May 7, 2008. Why?" Again, plaintiff did not ask to see Health Services Unit staff. Staff responded, "Doctor order expired—appointment for co-pay required. Let us know if you want the appointment."

On May 15, 2008, plaintiff received a $25.00 money order so he submitted another health service request to the Health Services Unit, this time stating, "I now have $7.50 for co-pay for the medication I was taking for migraine headaches. It had been ordered expired May 7, 2008[;] an appointment for co-pay is required." Staff responded, telling plaintiff that an appointment had been set for May 19, 2008.

Plaintiff was seen by a nurse Christine Bausch on May 19, 2008. He told her that he had migraine headaches almost every day and wanted to continue receiving the headache medicine. The nurse could not renew the prescription herself, so she left a note for defendant Cox. On May 20, 2008, defendant Cox renewed plaintiff's prescription for the headache medicine (and increased the daily maximum to five capsules). Plaintiff was not required to see defendant Cox face-to-face or pay the $7.50 co-pay that had been requested of him.

Plaintiff complained about the delay in receiving his medicine through the institution's grievance process. His grievance was rejected on the ground that plaintiff had failed to identify the name of the medicine, and plaintiff appealed that rejection on May 12, 2008. Defendant John Paquin, the warden of the institution, reviewed plaintiff's grievance and the appeal materials on May 28, 2008. On July 7, 2008, defendant Paquin found that it had been proper for the complaint examiner to reject the grievance.

OPINION

The Eighth Amendment prohibits "deliberate indifference" to a prisoner's "serious medical need." *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). Defendants do not challenge plaintiff's contention that his regular migraine headaches were sufficiently serious to constitute a "serious medical need." What they argue is that there is no evidence that defendants were deliberately indifferent to that medical need. I agree.

Plaintiff contends that defendant Cox violated his Eighth Amendment rights because he "held [the medicine] hostage" until plaintiff offered to pay the $7.50 co-pay. Theoretically, if defendant Cox actually had known that plaintiff was not receiving any migraine medication and

4

then simply chose not to provide it–perhaps because he did indeed wish to squeeze $7.50 out of plaintiff first–then this might amount to deliberate indifference to plaintiff's need for migraine medicine, especially if Dr. Cox knew that plaintiff did not have the money. The record, however, does not support such a theory.

In particular, no reasonable jury could find that defendant Cox knew that plaintiff's prescription had been discontinued until May 19 or May 20, when the nurse left him a note. Although plaintiff went to see defendant Cox in February and mentioned his migraines, this alone does not allow an inference that defendant Cox was on notice that he needed to renew plaintiff's prescription in May. Likewise, when plaintiff did start complaining about the lack of prescription on May 8, 2009, he did not ask for treatment, which meant there was no notation of the request in plaintiff's progress notes. It was not until plaintiff gathered $7.50 and asked for treatment that the health services staff would have first placed plaintiff's concerns on the doctor's radar.

Plaintiff makes much of the point that there were still 21 capsules available when his prescription expired, but this fact does not suggest any wrongdoing on Cox's part. At most, it suggests an explanation for why plaintiff was confused when his medication suddenly stopped. Although it was plaintiff's duty to request prescription renewals 5 to 7 days ahead of time, he may have thought his prescription had not ended because there were capsules still available. (Apparently, he still believes this.) However, his prescription *had* ended: it was for a set period of time, not a number of capsules. The fact that he had leftover capsules is unremarkable in light of the fact that the medicine was taken *as needed*.

Plaintiff is understandably frustrated by the delay he suffered. Without a doubt, there was a breakdown in communication. Not only was plaintiff confused by the sudden cutoff from his medicine, when he asked health services staff why it was so, he got more confusion: they told him that he would have to pay $7.50 before he could get his prescription renewed although that turned out to be false. If anything, these problems suggest that the institution's procedures for requesting prescription renewals are faulty or not well-explained to prisoners or staff. (Notably, defendants do not describe any particular procedure for requesting prescription renewals.)

But nothing suggests that defendant Cox is to blame for this problem. Moreover, to the extent some other prison official may be responsible for plaintiff's confusion and subsequent delay in migraine medicine, the circumstances suggest mere negligence, not "deliberate indifference." *Washington v. LaPorte County Sheriff's Dept.*, 306 F.3d 515, 518 (7th Cir. 2002) ("ordinary negligence by prison officials is not enough to show an Eighth Amendment violation.") (citations omitted).

Because plaintiff has failed to adduce evidence that would allow a reasonable jury to infer that defendant Cox was deliberately indifferent to his serious medical needs, plaintiff's claim against defendant Cox fails. Plaintiff's claim against defendant Paquin fares no better. The record shows that defendant Paquin did not review plaintiff's appeal until May 28, 2009, after plaintiff had received a renewed prescription from defendant Cox. Although plaintiff points out that he sent the appeal on May 12, so it could have been reviewed earlier, it is not unreasonable that a warden in his role as appellate decision maker would not review a rejected grievance immediately. Paquin's delay in reviewing the rejected grievance does not amount to deliberate indifference. Moreover, recent case law suggests that, even if Paquin had reviewed the complaint

6

earlier, he could not be held liable under the Eighth Amendment for failing to act on the merits of the grievance instead of simply deciding whether its rejection was proper. Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009) (complaint examiner's rejection of grievance on timeliness grounds does not give rise to Eighth Amendment claim).

## ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Burton Cox and John Paquin, dkt. #25, is GRANTED and the motion for summary judgment filed by plaintiff Dexter Sallis, dkt. #31, is DENIED. The clerk is directed to enter judgment in favor of defendants and close this case.

Entered this 24th day of August, 2009.

BY THE COURT:
/s/
STEPHEN L. CROCKER
Magistrate Judge